Saul **SANTIAGO CORREA, Waldo Torres Lopez, Isidoro Ramos Cruz, Marcos Castro De Leon, and Leonardo Colon Santana, Plaintiffs,**

v.

Rafael **HERNANDEZ COLON, individually and as Governor of the Commonwealth of Puerto Rico; Alvaro Padial, individually and as former Special Assistant to the Governor, in charge of Administration; Franklin Martinez Monge, individually and as Assistant to the Governor, in charge of Administration, Defendants.**

Civ. No. 85–1440 (JAF).

United States District Court, D. Puerto Rico.

July 7, 1986.

Héctor Urgell Cuebas, Pedro Miranda Corrada, Héctor González López, San Juan, P.R., for plaintiffs.

Zuleika Llovet, Saldana, Rey, Moran & Alvarado, Santurce, P.R., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT

FUSTE, District Judge.

This matter was tried before the Court on July 1, 1986. The plaintiffs are former employees of La Fortaleza, the official residence and place of business of the Governor of Puerto Rico. The five plaintiffs seek declaratory and injunctive relief, back pay, and damages under the First and Fourteenth Amendments to the United States Constitution. The cause of action is couched on 42 U.S.C. Sec. 1983. Jurisdiction has been invoked under 28 U.S.C. Sec. 1343. We have carefully evaluated the evidence received. Furthermore, we have noted the special and unique situation presented by this case, inasmuch as plaintiffs relate to La Fortaleza, the official residence and place of business of the Governor. On the basis of the evidence, we enter our **findings of fact** and **conclusions of law.** Fed.R.Civ.P. 52.

### Findings of Fact

La Fortaleza comprises the Executive Mansion and the office area of the Governor. There, all activities proper of the position of Governor are held. The official residence of the Governor and his family is located in the building. All domestic, personal, and official services needed at La Fortaleza are based on the premises.

One of the areas which relate to this case is the Press and Communications Office. Said office handles all formal and some

informal communications of the Governor and his family. It generates all the news material to be used as potential material for public dissemination regarding the office in question. There, diverse government administration matters are passed upon and other related matters of official and personal interest to the Governor are handled. The other areas of La Fortaleza involved in this suit are those areas of the building complex that house the Governor's living quarters, his office, his staff's office, kitchens, formal and informal dining rooms, and related facilities.

The employees at La Fortaleza fall under two general categories, known as career employees and positions of trust, all under the Puerto Rico Public Service Personnel Law, 3 L.P.R.A. Secs. 1301–1431. See specifically sections 1350 and 1352. In turn, La Fortaleza has its own personnel regulation. The same was approved on January 3, 1978, following legal authority under 3 L.P.R.A. Sec. 1343. The regulation contains a specific section, section 5.2, that deals with trust positions within La Fortaleza's personnel-hiring scheme.[1]

The five plaintiffs fall into two categories of employment, all classified since the time of their hiring as employees in trust positions. Plaintiffs Saúl Santiago Correa and Waldo Torres López were employed at the Press Office in the capacity of Recording Technicians. Plaintiffs Isidoro Ramos Cruz, Marcos Castro de León, and Leonardo Colón Santana, were employed, the first two as cleaning persons, and the third as gardener, all at the Executive Mansion.

Plaintiff Saúl Santiago Correa had been employed by La Fortaleza in the position of Recording Technician No. 98, assigned to the Press and Communications Office since June 1, 1977. The plaintiff was separated and dismissed from said position by means of a letter signed by defendant Alvaro Pa-

dial, Special Aide to the Governor in charge of Administration. The letter is dated January 18, 1985. Plaintiff Waldo Torres López had been employed by La Fortaleza in the position of Recording Technician No. 83, assigned to the Press and Communications Office since July 16, 1980. The plaintiff was separated and dismissed from said position by means of a letter also signed by Alvaro Padial on January 18, 1985.

Plaintiffs Isidoro Ramos Cruz and Marcos Castro de León had been employed as cleaning persons (janitors) at positions 285 and 315 since February 16, 1981 and July 1, 1982, respectively. Their work was to be performed at the Executive Mansion. Isidoro Ramos Cruz was separated and dismissed from the mentioned position by defendant Alvaro Padial on March 15, 1985. Plaintiff Marcos Castro de León was separated and dismissed by defendant Franklin Martinez Monge on April 12, 1985. Plaintiff Leonardo Colón Santana had been employed by the office of the Governor in the position of gardener, No. 306, to work at the Governor's mansion, since July 14, 1983. Plaintiff was separated and dismissed from said position by defendant Franklin Martinez Monge on April 2, 1985. This plaintiff was transferred on February 21, 1984 to the Governor's mansion to perform duties of cleaning person until the time of his separation.

As it pertains to plaintiffs Saúl Santiago Correa and Waldo Torres López, the great weight of the evidence is to the effect that recording technicians, as members of the Governor's Press Office, have access to and work together with those that prepare press releases, prepare speeches for the Governor, write messages for his signature, and edit written and taped material. Those assigned to the Press Office are in a sense close persons to the Governor. The recording technicians are always next to

---

**1.** The statute and the regulation are simply material in determining whether an employee has a property right in his job from the standpoint of due process removal and actions for discrimination. However, the first amendment right recognized in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), as reformulat-

ed in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), are controlling. The labels of "confidential", "policymaking", "career" or "confidential employee" do not alone render political affiliation an appropriate prerequisite for a particular job position.

the Governor; they have access to the Governor's daily calendar, and travel with him when needed. The recording technicians are, thus, exposed to the conduct and acts of the Governor, including those intended for public dissemination, as well as those intended to be confidential in nature. It was quite clear from the evidence that anyone sitting as Governor would logically want those persons working in his Press Office, a group now consisting of twelve employees, to be of his own choosing.

As it pertains to plaintiffs Isidoro Ramos Cruz, Marcos Castro de León, and Leonardo Colón Santana, as cleaning persons or janitors, and gardener and/or cleaning person, it is evident from the evidence received that the job includes sweeping and mopping floors, cleaning bathrooms, vacuum cleaning rugs, washing dishes, and similar related chores, both in the office area of the Governor and aides, as well as in the living quarters of La Fortaleza and/or the kitchen areas. It is difficult to accept that any governor is going to feel comfortable having this type of employee around him unless there exists trust and confidence in the person. We cannot think of anything that detracts from the mentioned aspect of this particular job.

Our examination of the documentary evidence received shows that all the plaintiffs were confidential or trust employees as defined by the cited law and regulation. Furthermore, there is no preponderant evidence to the effect that plaintiffs were fired because of their accepted political party affiliation to the New Progressive Party. We cannot accept conclusory evidence to that effect. Political party affiliation within the context of the evidence received seemed to be immaterial. The plaintiffs did not prove that the named defendants Rafael Hernández Colón, Alvaro Padial, and Franklin Martinez Monge acted under color of law to deprive plaintiffs of any constitutionally-protected right. The evidence did not meet the relevant *Branti* inquiry, whether "party affiliation is an appropriate requirement for the effective performance of the public office." 445 U.S. at 518, 100 S.Ct. at 1295. Moreover, defendants' evidence established that political party affiliation was immaterial, the dismissals being based on considerations of confidentiality and loyalty as defined in the local law and regulation.

### Conclusions of Law

Plaintiffs' positions of recording technicians and cleaning persons and/or gardener at La Fortaleza were non-tenured, trust or confidential positions. There is no evidence of weight indicating that the firings were politically motivated, even though all plaintiffs insisted in court that they were known to be members and sympathizers of the New Progressive Party.

An examination of the doctrine of *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), is of assistance in solving the rather unique nature of this dispute. Confidentiality, or better stated, confidence or expected loyalty, is the appropriate criterion for intimate services to a governor, such as personnel at his Press Office and those who clean around him. As stated earlier, within the context of this record it is not proper to speak in terms of policymaking employees or of political affiliation simply because plaintiffs did not meet the *Branti* burden or, better stated, the *Branti* inquiry. Although it is a true proposition that a public agency that fires an employee because of his political beliefs or party affiliation infringes his freedom of speech under *Branti* and *Elrod*, there are exceptions to this principle directed to deal with effective functioning of government. If, as here, the two groups of employees, Press Office and house cleaning, are deemed confidential, then the defendants could fire them without violating the Constitution. *See Soderbeck v. Burnett County, Wis.*, 752 F.2d 285, 288 (7th Cir.1985). On these aspects we must be practical and fair, as well as legal. We cannot ignore realities that ordinary citizens would consider as valid propositions. We are not to force the Governor to run the Executive Mansion at La Fortaleza keeping around

him people that he does not trust. As stated in *Soderbeck,* the right of the employee to his job or the right of the governmental unit to fire him, does not rest solely on policymaking positions. "[I]f Rosalynn Carter had been President Carter's secretary, President Reagan would not have had to keep her on as his secretary." *Soderbeck,* 752 F.2d at 288.

Applying these practical (more than legal) concepts, we conclude that, on this record, the defendants did not violate plaintiffs' constitutional rights when they were dismissed from their positions as recording technicians at the Governor's Press Office, and as cleaning persons or janitors and/or gardener at the Executive Mansion. We further conclude as a matter of law that here, the standard of trust and/or loyalty as perceived by the Governor, all because of the closeness of these workers to him, to his family, and his staff, is not constitutionally offensive. *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The political affiliation criterion is irrelevant in the unique circumstances of this case. In any event, we cannot responsibly find on this record that the employees were fired by any of the defendants simply because of party affiliation. Probably party affiliation played a part, but, in any event, confidence and loyalty, as perceived by La Fortaleza, controlled the decision to dismiss the employees.

### Judgment

Judgment shall be entered dismissing the complaint.

IT IS SO ORDERED.