Saul **SANTIAGO–CORREA**, et al.,
**Plaintiffs, Appellants,**

v.

Rafael **HERNANDEZ–COLON**, et al.,
**Defendants, Appellees.**

No. 87–1100.

United States Court of Appeals,
First Circuit.

Heard Oct. 8, 1987.

Decided Dec. 18, 1987.

Hector Gonzalez–Lopez with whom Hector Urgell–Cuebas and Pedro Miranda–Corrada, San Juan, P.R., were on brief, for plaintiffs, appellants.

Zuleika Llovet, San Juan, P.R., with whom Saldana, Rey, Moran & Alvarado, Santurce, P.R., Hector Rivera–Cruz, Secretary of Justice, and Rafael Ortiz–Carrion, Sol. Gen., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge,
COFFIN and BOWNES, Circuit Judges.

COFFIN, Circuit Judge.

Five plaintiffs, who were formerly employed at La Fortaleza, the Executive Mansion of the Governor of Puerto Rico, appeal from a judgment of the district court in favor of the defendants, the Governor and two of his administrative assistants. In their complaint, the plaintiffs claimed that the defendants, who were members of the Popular Democratic Party, wrongfully fired them due to their affiliation with the New Progressive Party in violation of the First and Fourteenth Amendments to the United States Constitution and Section I, Article II of the Constitution of the Commonwealth of Puerto Rico. They sought back pay, damages, reinstatement, and other relief pursuant to 42 U.S.C. § 1983. After a bench trial, the district court dis-

missed the complaint. *Santiago Correa v. Hernandez Colon*, 637 F.Supp. 1159 (D.P.R.1986). We affirm the district court's judgment with regard to two plaintiffs, who worked in the Press Office at La Fortaleza, but vacate that part of the judgment dismissing the complaint of the other three, who were employed as cleaning persons.

## I.

The parties have stipulated the essential facts. Plaintiffs Santiago Correa and Torres Lopez were formerly employed as recording technicians in the Press and Communications Office of La Fortaleza.[1] Two others, Ramos Cruz and Castro de Leon, were former cleaning persons there.[2] The fifth, Colon Santana, was gardener at the mansion and then served as cleaning person. All five of the plaintiffs were classified as "confidential employees" pursuant to P.R.Laws Ann. tit. 3, § 1350 (1978) and the personnel regulations of La Fortaleza.[3] The plaintiffs were discharged from their positions by letters, essentially identical in nature, stating that, pursuant to the Puerto Rico Public Service Personnel Act, P.R. Laws Ann. tit. 3, §§ 1301–1431 (1978), they were being dismissed because of considera-tions of confidentiality and loyalty. *Santiago Correa*, 637 F.Supp. at 1160–61.

The case proceeded to trial on July 1, 1987. On July 6, the district court issued findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, and entered judgment for the defendants.

In its findings of fact and conclusions of law, the district court stated, "defendants' evidence established that political party affiliation was immaterial, the dismissals being based on considerations of confidentiality and loyalty as defined in the local law and regulation." *Santiago Correa v. Hernandez Colon*, 637 F.Supp. at 1161. Finding that the two groups of employees, Press Office workers and house cleaners, were "confidential," the court concluded that "the defendants could fire them without violating the Constitution." *Id.* With regard to the plaintiffs' claims that they were fired due to their political party affiliation, the court said:

The political affiliation criterion is irrelevant in the unique circumstances of this case. In any event, we cannot responsibly find on this record that the employees were fired by any of the defendants simply because of party affiliation.

1. We summarize the stipulated duties of the recording technicians as follows: installing all the electronic equipment to be used in the different official activities of the Governor; recording the meetings and activities of the Governor; caring and watching for the good performance of the sound equipment; providing maintenance for the sound equipment; taking the sound equipment to the repair shop when needed; recording the sound in all the public participations of the Governor, Press Conferences, Statements, Speeches, Messages, Meetings with the press or groups, etc.; coordinating with television stations to acquire those films recorded during activities where the Governor had participated and that should be kept in Press Office files; keeping a file, duly identified and codified, of all recordings made; and performing different tasks related to the regular work of the Press Office assigned by the Secretary of that office. App. at 23–24.

2. The responsibilities of the cleaning persons were:

cleaning the bathrooms, floors and walls of the different quarters; emptying, cleaning and washing the waste baskets; supplying bathroom paper, soap and paper towel to the different bathrooms; cleaning the furniture and accessories; cleaning and washing dishes, glassware, pots and casseroles, ovens, stoves, refrigerators, etc.; informing of [sic] defects in the equipment and tools used; keeping the area assigned clean and in order; carrying out any other related tasks assigned.
App. at 22–23.

3. Section 1350 provides, in pertinent part: "Confidential employees are those who intervene or collaborate substantially in the formulation of the public policy, who advise directly or render direct services to the [Governor] ... [and] shall be of free selection and removal ... for good cause by provision of law." The regulations distinguish between three types of "trust" employees: a) those involved in the formulation of public policy decisions, b) those in "[d]irect services to the Governor that require a high degree of personal trust," and c) those "whose trust nature is established by law." Section 5.2, Personnel Regulations, Office of the Governor.

Probably affiliation played a part, but, in any event, confidence and loyalty, as perceived by La Fortaleza controlled the decision to dismiss the employees.

*Id.* at 1162.

As we explain below, the district court's application of the "confidentiality" exception to liability for patronage dismissals swept too broadly with regard to the cleaning persons. The court's application of that exception to the recording technicians, however, was proper.

## II.

In *Vazquez Rios v. Hernandez Colon,* 819 F.2d 319 (1st Cir.1987), we examined the existence of a narrow exception to the imposition of liability, under *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), for patronage dismissals in situations where the discharged public employees served in "confidential" positions. We recognized that "political loyalty could be deemed an appropriate requirement of the job" in situations where the public employees occupied positions of "unusually intimate propinquity relative to government leaders...." *Vazquez Rios v. Hernandez Colon,* 819 F.2d at 324. In discussing "the range and reach of the 'confidential' public employee exception," we distinguished between "employees whose jobs *intrinsically* place them in a confidential position relative either to policymakers or the policy making process, and those whose jobs merely permit an *incidental* exposure to sensitive material that is in fact beyond the bounds of their employment." *Id.* at 325. The application of these standards in this case lead to differing results for the two classes of employees involved.

### A. *Cleaning Persons*

Like the instant case, *Vazquez Rios* involved, *inter alia,* the dismissal of domestic workers at La Fortaleza. There, we rejected the presumption, urged by the defendants, that in dismissing the employees, they were entitled to qualified immunity because the employees were "confidential," and thus subject to dismissal on the basis of political affiliation. *Id.* at 323–26. Affirming the denial of the defendants' motion for summary judgment with regard to the claims of those employees, we left open the possibility that the defendants might establish, at trial, that those employees, or some of them, were "within the sphere of confidentiality sufficiently to render political affiliation an appropriate criterion for their jobs." *Id.* at 329. In the case at bar, the defendants argue that the evidence establishes that jobs of Ramos Cruz, Castro de Leon, and Colon Santana fell within that sphere. We disagree.

The responsibilities of these plaintiffs, see *supra* note 2, involved general cleaning tasks in La Fortaleza; these tasks at times placed them in the office areas and living quarters of the Governor. Access to sensitive material was incidental at best. They were not "confidential" employees, like personal secretaries, whom public officials may fire because of political affiliation. *See Soderbeck v. Burnett County, Wis.,* 752 F.2d 285, 288 (7th Cir.1985). Thus, the district court erred in concluding that the cleaning persons were "confidential" employees, whom the defendants could fire at will.[4]

It follows that the district court erred in rejecting as "immaterial" and "irrelevant" the cleaning persons' claims that their dismissals were politically motivated. *See Santiago Correa,* 637 F.Supp. at 1161–62. Although the court said that "there [was] no preponderant evidence to the effect that

---

**4.** The court's suggestion that "It is difficult to accept that any governor is going to feel comfortable having this type of employee around him unless there exists trust and confidence in the person," exemplifies its misinterpretation of the "confidentiality exception" to *Elrod–Branti* liability. As we commented in *Vazquez Rios,* "[t]hat kind of analysis ... puts the cart before the horse. Political affiliation may serve as a proxy for trustworthiness in certain circumstances, but the reverse cannot be true. Lack of political affiliation (or possession of the 'wrong' political affiliation) cannot automatically be read to imply untrustworthiness." 819 F.2d at 325.

plaintiffs were fired because of their affiliation to the New Progressive Party," *id.* at 1161, we cannot accept that conclusion as a clear finding of fact in light of the court's incorrect determination that party affiliation was immaterial.[5] Since the district court concluded erroneously that the defendants were entitled to fire the cleaning persons because they were "confidential" employees, we remand the case to allow the district court to reconsider whether the cleaning persons proved that their dismissals were politically motivated, and if so, the remedies available.

## B. *Press Office Employees*

While plaintiffs Santiago Correa and Torres Lopez steadfastly maintained that their duties were solely technical, the incumbent press officer, Velez, testified that all members of his office participated in writing press releases, editing speeches and tapes, writing letters and messages for the Governor, and advising other agencies on press matters. The recording technicians not only performed the foregoing duties, but tape recorded the Governor in hastily called sessions and sent tapes to radio stations, logged in every speech and press conference, verified the existence or non-existence of any questioned gubernatorial remark, were present at off-the-record conferences and strategy discussions, and could erase or copy any tape. The district court could and did credit this testimony.[6]

The duties so described fall within the specific domain recognized by the Court in *Branti:*

> the Governor of a State may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those

persons share his political beliefs and party commitments.

445 U.S. at 518, 100 S.Ct. at 1295. We conclude that because the Press Office handled matters potentially subject to partisan political differences and because the positions held by Santiago Correa and Torres Lopez inherently encompassed the communication of the Governor's official positions, political affiliation can be said to have been an appropriate requirement for effective performance. *See Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255, 1258 (1st Cir.1987); *Brown v. Trench,* 787 F.2d 167 (3d Cir.1986) (assistant director of public information for county subject to removal based on party affiliation); *see also Vazquez Rios v. Hernandez Colon,* 819 F.2d at 327 (Governor and co-defendants entitled to qualified immunity from damages for dismissal of editing assistant). Thus, the district court did not err in concluding that the defendants could fire Santiago Correa and Torres Lopez because of their political affiliations.

*That part of the judgment dismissing the complaints of Santiago Correa and Torres Lopez is affirmed. The remainder of the judgment dismissing the complaints of Ramos Cruz, Castro de Leon, and Colon Santana is vacated. The case is remanded to the district court for further proceedings consistent with this opinion. Half costs to appellants.*

---

5. Moreover, the court's conclusion that "[p]robably party affiliation played a part," *Santiago Correa,* 637 F.Supp. at 1162, renders any such finding ambiguous.

6. This testimony is consistent with the stipulated duties of the recording technicians, which included the performance of "different tasks related with the regular work of the Press Office assigned to [them] by the Secretary of said office." App. at 24.