Hugo V. OLIVERA, Plaintiff, Appellant,

v.

NESTLE PUERTO RICO, INC., et al., Defendants, Appellees.

No. 90–1363.

United States Court of Appeals, First Circuit.

Heard Oct. 1, 1990.

Decided Dec. 27, 1990.

As amended Jan. 4, 1990.

Rehearing and Rehearing En Banc Denied Feb. 15, 1991.

James A. Toro, San Juan, P.R., with whom Nachman & Fernandez Sein, Santurce, P.R., were on brief, for appellant.

Jay A. Garcia–Gregory, with whom Jose A. Silva–Cofresi and Fiddler, Gonzalez & Rodriguez, San Juan, P.R., were on brief, for appellees.

Paul Bogas with whom Donald R. Livingston, Acting Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, and Vella M. Fink, Washington, D.C., Asst. Gen. Counsel, were on brief, for amicus curiae EEOC.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and WOODLOCK,* District Judge.

---

* Of the District of Massachusetts, sitting by designation.

1. The complaint named two defendants, Nestle Puerto Rico, Inc. and Nestle Enterprises, Inc.

BOWNES, Senior Circuit Judge.

This is an appeal in an age discrimination in employment case by the plaintiff-employee, Hugo V. Olivera from a summary judgment for defendant-employer, Nestle Puerto Rico, Inc. The cause of action arises under the Age Discrimination In Employment Act (ADEA), 29 U.S.C. § 626(c).

Plaintiff started working for defendant in March of 1982 as marketing manager. In November of 1983, he was promoted to the position of general sales manager. He continued as general sales manager until he was discharged on November 16, 1987. Plaintiff brought suit on May 25, 1988, under the ADEA and Puerto Rico law alleging that he was discharged because of his age—55. After pretrial discovery, defendant moved for summary judgment.[1] The district court granted defendant's motion for summary judgment under the ADEA and declined to take jurisdiction over plaintiff's pendent claim under Puerto Rico law. *Olivera v. Nestle–Puerto Rico, Inc.*, 732 F.Supp. 285 (D.P.R.1990).

## I. SUMMARY JUDGMENT STANDARDS

Before discussing the facts, which are set forth fully and accurately in the district court opinion, we summarize the controlling summary judgment principles. The key sentence of the Rule states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers or interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Supreme Court has emphasized "that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

After the motion for summary judgment was filed, plaintiff moved for a voluntary dismissal against Nestle Enterprises, Inc.; the motion was granted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis original). The Court pointed out that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. The standard for determining whether summary judgment should be granted "mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250, 106 S.Ct. at 2511.

Appellate review of summary judgment is plenary. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990); *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). In making our review, we look at the record in the light most favorable to the party opposing summary judgment and accept all reasonable inferences favorable to such party arising from the record. *Garside v. Osco Drug, Inc.*, 895 F.2d at 48; *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 934 (1st Cir.1987).

## II. THE DISTRICT COURT OPINION

After examining the materials filed, the district court found that plaintiff met the four-pronged test necessary to establish a prima facie case of age discrimination: he was within the age group protected by the statute, 40–70 years of age; he was discharged; he was qualified for the position he held and doing his job well enough to rule out the possibility that his discharge was for inadequate job performance; and he was replaced by someone with qualifications similar to his own, thus showing a continued need by the employer for the same services and skills. *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 153 (1st Cir.1990); *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1110–11 (1st Cir.1989). We agree with the district court that plaintiff made out a prima facie case.

Mindful of the shifting burdens in an ADEA case, the district court then examined the nondiscriminatory reasons articulated by the employer for plaintiff's termination. Defendant maintained that its president, Eugene Prince, had lost confidence in plaintiff's ability to continue as a senior member of the management. This erosion of confidence in the plaintiff was, defendant claimed, caused by four incidents which evinced lack of discretion by plaintiff: the advance disclosure of defendant's plans for a reduction in force; critical comments by plaintiff about defendant's corporate management policies made outside of the chain of command without first attempting to resolve the matter internally; statements made by plaintiff to an auditor that defendant's accounting practices were irregular and that kickbacks were being made by a supplier to defendant's president; and remarks made by plaintiff to a corned beef supplier of defendant about the retirement of defendant's president.

The district court next scrutinized plaintiff's rebuttal of the defendant's articulated reasons for the discharge. The district court first reviewed plaintiff's employment history with defendant and his job appraisal reports, which can be summarized as follows. Plaintiff worked for a subsidiary of defendant for eleven years. He became marketing manager of defendant in March of 1982 and was promoted to general sales manager in November of 1983, receiving a raise in salary and fringe benefits. Plaintiff's first job appraisal report, dated March 5, 1983, rated his performance as above average and as exceeding his employer's expectations. The next appraisal, dated January 1, 1985, rated plaintiff's performance as competent and within the employer's expectations. This appraisal had a special section covering attitude and personality relative to confidentiality. It stated: "Maturation and ability to retain confidential information: good." This appraisal report evaluated plaintiff's loyalty to the company and his sense of order and system as excellent. As noted by the district court, this job performance appraisal was made after the incident of

June 11, 1984, accusing plaintiff of disclosing confidential information relative to a planned reduction in force by defendant. The next appraisal is dated October 20, 1986. Plaintiff's overall job performance was found to be above average, exceeding his employer's expectations. The report found, as did the prior one, that plaintiff's maturation and ability to retain confidential information was "good." Plaintiff's objectivity, company loyalty, judgment, common sense, maturity and reliability were rated as "excellent." This appraisal was made, as the district court observed, after the alleged incident in which plaintiff was reported to have made critical remarks about company management. Plaintiff's last employment appraisal was rendered on October 26, 1987, twenty days prior to his discharge. He was found to have rendered competent performance, meeting his employer's expectations. Plaintiff received a "good" rating as to attitude and personality relative to confidentiality, tactfulness, politeness and sensitivity. He received an "excellent" rating on: objectivity, fairness in the use of authority, company loyalty, judgment, common sense, maturity, ability to handle stress situations, sense of order and system, and reliability. The appraisal summary concluded that plaintiff continues to be energetic, has a good business sense and the ability to produce results with limited resources at his disposal. This final appraisal, as the district court found, was made "contemporaneously" with plaintiff's alleged indiscretion in discussing the president's retirement with a corned beef supplier. Finally, we note, as did the district court, that all during his employment plaintiff received salary increases based on merit and performance.

The district court next examined plaintiff's explanations of the four incidents that allegedly culminated in defendant's loss of confidence in plaintiff as a high level management employee. The court correctly stated that "Olivera has to show by a preponderance of the evidence that the reasons articulated by NPR [employer] as grounds for dismissal were most probably not the actual reasons. *Menzel v. Western Auto Supply Co.,* 848 F.2d 327,

330 (1st Cir.1988)." *Olivera v. Nestle-Puerto Rico, Inc.,* 732 F.Supp. at 288. After reviewing plaintiff's explanations of the four incidents, the district court found: "Mr. Olivera has addressed the reasons articulated by NPR [employer] for his dismissal and has shown by a preponderance of the evidence that they were most probably not the actual reasons." *Id.* at 290. Our independent review of the record compels the same conclusion.

The district court then went on to assess the evidence adduced by plaintiff to show that he was discharged because of his age. It concluded that "Olivera has not produced direct or circumstantial proof of age discrimination sufficient to defeat defendant's motion for summary judgment." *Id.* at 291. For the reasons that follow, we find this to have been error.

## III. THE SHIFTING BURDEN

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is, of course, the seminal case on the order and allocation of proof in an employment discrimination case. The plaintiff carries the initial burden of establishing a prima facie case. If this is done, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. If the articulation is made, plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." *Id.* at 805, 93 S.Ct. at 1826. *McDonnell Douglas* was, however, far from the last case by the Court on the shifting burden of proof in employment discrimination cases. The interstices left open by that decision had to be filled.

In *Teamsters v. United States,* 431 U.S. 324, 358–361, 97 S.Ct. 1843, 1866–1868, 52 L.Ed.2d 396 (1977), the Court discussed the shifting burden of proof in a discrimination case based on pattern or practice.

In *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), the Court explained the shifting burden as follows:

> A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *See Teamsters v. United States, supra* [431 U.S.], at 358 n. 44 [97 S.Ct. at 1866 n. 44]. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race.

*Id.* at 577, 98 S.Ct. at 2949–50 (emphasis in original).

The next case in the wake of *McDonnell Douglas* was from this circuit. In *Board of Trustees v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1978), the Court held that articulating legitimate nondiscriminatory reasons for employment action does not mean that the employer must prove absence of discriminatory motive.

In *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Court, speaking through Justice Powell, the same Justice who had written *McDonnell Douglas*, further amplified and explained the *McDonnell* shifting burden. The Court reiterated the three *McDonnell* steps in an employment discrimination case, *id.* at 252–54, 101 S.Ct. at 1093–94, and then concluded its shifting-burden exposition by a statement that bears directly on the case before us:

> The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer *or indirectly by showing that the employer's proffered explanation is unworthy of credence.* See *McDonnell Douglas*, 411 U.S., at 804–805, 93 S.Ct. at 1825–26.

*Id.* at 256, 101 S.Ct. at 1095 (emphasis ours).

The last case, for our purposes, in this line of decisions is *United States Postal Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).[2] In *Aikens*, the Court added some gloss to *Burdine:*

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff." *Burdine, supra* [450 U.S.], at 253 [101 S.Ct. at 1093].

*Id.* at 715, 103 S.Ct. at 1482. A portion of Justice Blackmun's concurrence must be quoted:

> While the Court is correct that the ultimate determination of factual liability in discrimination cases should be no different from that in other types of civil suits, *ante,* at 716 [103 S.Ct. at 1482], the *McDonnell Douglas* framework requires that a plaintiff prevail when at the third stage of a Title VII trial he demonstrates that the legitimate, nondiscriminatory reason for the employment decision is in fact not the true reason for the employment decision.

*Id.* at 718, 103 S.Ct. at 1483.

At least nine circuits have held that the *Burdine* alternative language means that making out a prima facie case *plus* proving

**2.** We are aware, of course, of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), but find it not relevant to the issues before us.

that the articulated reason for the discharge was pretextual is sufficient, without more, to raise a genuine issue of fact as to discrimination. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464–65 (2d Cir.1989) (summary judgment for employer reversed: "A showing that a proffered justification is pretextual is itself sufficient to support an inference that the employer intentionally discriminated."); *Fite v. First Tennessee Production Credit Ass'n.*, 861 F.2d 884, 890–91 (6th Cir.1988) (employer's motion for directed verdict properly denied because jury could have found that employer's reason for discharge was a mere pretext); *Samarzia v. Clark County*, 859 F.2d 88, 91–92 (9th Cir.1988) (directed verdict properly denied; a reasonable jury could have concluded that employer's reasons were pretextual); *Overgard v. Cambridge Book Co.*, 858 F.2d 371, 375–76 (7th Cir.1988) (plaintiff may prevail in one of two ways: either by directly proving that employer was more likely motivated by a discriminatory reason or by indirectly demonstrating that defendant's proffered reason for the termination is not credible. "If the plaintiff can convince the trier of fact that the defendant did not act for the reason it offers as justification, then the defendant has not met its burden and the plaintiff may thus prevail."); *MacDissi v. Valmont Industries, Inc.*, 856 F.2d 1054, 1057–59 (8th Cir.1988) ("As a matter of both common sense and federal law, an employer's submission of a discredited explanation for firing a member of a protected class is itself evidence which may persuade the finder of fact that such unlawful discrimination actually occurred."); *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1000 (3d Cir.1988) ("A showing that a proffered justification is pretextual is itself equivalent to finding that the employer intentionally discriminated"); *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1562–64 (11th Cir.1987) (summary judgment for employer reversed; employee raised a genuine issue of material fact as to whether employer's articulated reason for discharge was pretextual); *Thornbrough v. Columbus and Greenville R.R. Co.*, 760 F.2d 633, 646 (5th Cir.1985) ("In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext but rather whether the plaintiff raises a genuine issue of fact regarding pretext."); *Krodel v. Young*, 748 F.2d 701, 707–78 (D.C.Cir.1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985) (At very least *Burdine* and *Aikens* "make clear that an ADEA plaintiff who has established a prima facie case and has effectively discredited the employer's proffered justification need not, in all cases, submit additional evidence concerning the particular employment decision at issue in order to demonstrate that age was a determining factor in the employer's action.").

In this circuit, however, a plaintiff must meet three requirements to forestall summary judgment. In addition to making out a prima facie case, a plaintiff has the burden not only of proving that the articulated reasons of the employer were pretextual but also of adducing additional evidence that the articulated reasons were a pretext for age discrimination.

We have often discussed the interplay between the *Burdine* burden-shifting framework for proving age discrimination and the imperatives of Rule 56. *See, e.g., Menzel*, 848 F.2d at 328–30; *Menard [v. First Sec. Services Corp.]*, 848 F.2d [281] at 284–85 [1st Cir.1988]; *Dea, [v. Look]*, 810 F.2d [12] at 14–16 [1st Cir. 1987]. Generally speaking, the principles discussed above abide at the summary judgment stage. Most pertinent for our purposes, it remains true that when, as here, the employer has articulated a presumptively legitimate reason for discharging an employee, the latter must elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: age discrimination. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986) (summary judgment opponent who bears burden of proof on an issue must reliably demonstrate existence of genuine dispute as to material

facts); *Garside*, 895 F.2d at 48 (similar); Fed.R.Civ.P. 56(e).

*Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990). The Fourth Circuit also seems to follow the "additional" evidence test: "If the presumption is rebutted, the burden of production returns to the plaintiff to show that the defendant's proffered nondiscriminatory reasons are pretextual *and* that the employment decision was based on a sexually-discriminatory criterion." *Spencer v. General Elec. Co.*, 894 F.2d 651, 659 (4th Cir.1990) (emphasis added). *Spencer*, however, was decided after trial, not on summary judgment.

The question, therefore, under the First Circuit standard is whether the plaintiff here has "elucidate[d] specific facts which would enable a jury to find that the reason[s] given [were] not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." *Medina–Munoz* at 9. Considering the evidence in the light most favorable to plaintiff, we think he has. In addition to making out a prima facie case and showing that the employer's reasons for the discharge were a sham, plaintiff adduced the following evidence.

He testified by deposition that during a sales reorganization in June of 1985, eight people were fired, that four or five of them were over 40 years of age, that within two years those that had been fired were replaced, and that, with one exception, the replacements were under thirty years of age. The plaintiff also testified that all new employees that had been hired within five years of the date of his discharge were, with one exception, under thirty years of age. There was further deposition testimony by the plaintiff that Felipe Silva, vice president for sales and marketing, had told plaintiff more than once that "[he] had to get rid of several of [plaintiff's] subordinates because they were not performing according to his opinion up to standards because of their age." At the time of plaintiff's discharge, Silva was 37 or 38 years old. There was also evidence by plaintiff that at Christmas of 1986, the employer offered all employees over 58 a retirement package.[3] The district court weighed this evidence against countervailing evidence by the employer, discounted it and found it wanting. In doing so, it violated two summary judgment precepts: it did not look at the evidence in the light most favorable to plaintiff, and it weighed the evidence and determined the truth of the matter. This it could not do. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

This is not a case like *Medina–Munoz* "where the employee's evidence of pretext is tenuous." 896 F.2d at 10. Here, the employer's articulated reasons for its action were convincingly refuted. And unlike *Medina–Munoz*, plaintiff here adduced additional evidence that raised a legitimate inference of age discrimination: the discharge of a group of four or five employees over forty who were replaced within two years by people under thirty; the expressed views of an officer of the defendant to the effect that poor performance by some of plaintiff's subordinates was due to their age and for that reason they should be discharged; and a retirement inducement package aimed at employees over fifty-eight.

This case is more in the mold of *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, where a prima facie case was established, and it was found that the employer's reasons for the discharge were a pretext for discrimination based on sex. *Id.* at 158. In *Cumpiano*, after pointing out why the employer's articulated reasons were pretextual, we said:

> Mindful of these flaws, we think that the district court could rationally have concluded that the reasons offered to justify Cumpiano's dismissal "were not [the employer's] true reasons, but were a pretext for discrimination." *Burdine*,

---

**3.** Plaintiff also argued that a comment by one of the defendant's officers that defendant needed to "flatten" its sales organization meant that older executives should be eliminated. We agree with the district court that no inference of age discrimination could be raised by this offhand remark.

450 U.S. at 253, 101 S.Ct. at 1093. Once so glaring a pretext was unmasked, an important underpinning to a finding of discrimination clicked into place. *See Freeman* [*v. Package Machinery Co.*], 865 F.2d [1331] at 1341–42 [1st Cir.1988]; *cf. Medina–Munoz,* 896 F.2d at 10 (where employee's evidence of pretext is tenuous, more evidence of discriminatory animus may be required).

*Id.* Although *Cumpiano* was an appeal from a bench trial, not a summary judgment, we think the analysis and rationale are applicable to the case before us.

Although there was no smoking-gun evidence, it has been recognized that in discrimination cases direct evidence of bias is rare. Indeed, that is one of the reasons for the burden-shifting framework established in *McDonnell Douglas. See Furnco Construction Corp. v. Waters,* 438 U.S. at 577, 98 S.Ct. at 2949; *Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d at 157; *Hebert v. Mohawk Rubber Co.,* 872 F.2d at 1115–16; *Conway v. Electro Switch,* 825 F.2d 593, 597 (1st Cir.1987).

On a motion for summary judgment by the employer in a discrimination case, if the plaintiff has established a prima facie case and refuted the employer's articulated reasons for the action taken, the additional evidence necessary to raise a genuine issue as to discrimination must be viewed, not in isolation, but as part of the other evidence adduced by plaintiff. It must be kept in mind that in a case like the one before us plaintiff has already met two-thirds of the burden necessary for a trial on the merits. The plaintiff does not have to prove by a preponderance of the additional evidence that discrimination was in fact the motive for the action taken. All a plaintiff has to do is raise a genuine issue of fact as to whether discrimination motivated the adverse employment action. This burden has been met by plaintiff here.

Reversed and Remanded for a trial on the merits.